[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
 STATEMENT OF THE CASE
In this habeas corpus petition the petitioner seeks to vacate his convictions and sentences on two counts, The first count was for manslaughter in the first degree with a firearm, the second, was for attempted burglary in the first degree with a deadly weapon. This latter plea was entered in accordance with Alford v. North Carolina.
He received a total effective sentence of 30 years on April 11, 1996, the sentences on each count being 15 years to run consecutively. The convictions followed his pleas on February 2, 1996 to these two charges, they having been substituted for a charge of murder.
The petitioner's claim is that his pleas were not made voluntarily in that he was in such a state of fatigue as a result of sleep deprivation that the pleas were coerced.
 DISCUSSION I
In support of his petition, Mr. Ivers described the schedule he was on when he was brought from his place of confinement to the distribution point, prior to being transported to court. At the courthouse, he met with his lawyer and eventually entered the pleas he now seeks to vacate.
While he claims to have been in this state of sleep deprivation, he never complained to the judge who took his pleas. He also said that he understood the questions that were put to him at plea. He further admitted that the statute of limitations defense, as it may have applied to the substituted charges, had been explained to him prior to plea and he followed that explanation. He even admitted that he was happy with the plea rather than the sentence of 60 years he was exposed to on the murder CT Page 14987 charge. And, he admitted to having heard the state's attorney recite the facts of his case.
Counsel for the petitioner testified that the case was thoroughly discussed with him and that he went over the state's evidence on the murder charge, including respondent's Exhibits 2-5, statements of Gloria Dimock and Marty Knoff. He also advised Ivers of bite mark evidence the state was relying on and gave his opinion to the effect that the state had a good chance of convicting him of murder. (Having examined the exhibits, the court would concur with counsel's evaluation).
On the issue of the sleep deprivation, defense counsel stated he recalls no such complaint from Ivers and he detected no signs of such a condition. Further, he stated had he detected such a condition and concluded Ivers could not follow his conversation and the subsequent proceedings, he would halted the process. Counsel further noted that these pleas were not entered on the eve of trial or under any pressure of hurried circumstances. There was still time for deliberate consideration and trial preparation.
Of particular significance on this issue of the petitioner's mental state at plea and sentencing is the transcript of those two court proceedings. The plea consumed some 36 pages, and the sentencing 43 pages.
Responding to questions put to him by the court, the petitioner indicated he had discussed the case with his attorney, that they had time to go into the issues, that he was satisfied with his attorney's efforts, and he understood that he was waiving the statute of limitations defense so that the state would be able to substitute the two charges to which he pleaded for the murder charge.
The nuances of an Alford plea were explored in detail and at one point, (page 14 of February 2, 1996 transcript), Mr. Ivers corrected the judge's use of "burglary" rather than "attempted burglary. There is then an aside with defense counsel and Ivers participates by further responses to the court. He then gives a factual recitation of how the victim died at page 22, claiming his gun discharged accidentally. (This, the state was prepared to rebut by expert testimony which excluded an accidental discharge and the fact that the victim had two bullet wounds to the head.
Then, the petitioner agreed to the plea bargain by which he faced a maximum of 40 years with his lawyer able to argue for less.
He was actively involved in his sentencing on April 11, 1996 and CT Page 14988 addressed the court on his own behalf, going into the details of the death of the victim. The transcript refers to instances of the petitioner conferring with counsel.
On the basis of this overwhelming evidence, the court concludes that the petitioner's claim of coercion from sleep deprivation is unfounded. Therefore, the petition should be and is denied.
 II
Though the petitioner has enunciated his claim as one of coercion, his amended petition sets forth a claim of ineffective assistance of counsel.
In order to achieve finality on the subject of the petitioner's change of plea, the court will address that aspect of the petition as filed.
Some comment is appropriate to claims of ineffective assistance of counsel.
In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two pronged test to be applied in evaluation claims of ineffective assistance of counsel. In addition to being deficient, that is, not within the range of competence of lawyers with the ordinary skill and training in criminal law, the deficient performance must have prejudiced the defense.
Connecticut courts have addressed this test and elaborated upon a petitioner's burden in asserting such claims:
 "The right of a defendant to effective assistance is not, however, the right to perfect representation. State v. Barber, 173 Conn. 153, 159-60, 376 A.2d 1108
(1977); Chance v. Bronson, 19 Conn. App. 674, 678 564 A.2d 303 (1989). He must also show "that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." Herbert v. Manson, 199 Conn. 143, 144-45, 506 A.2d 98
(1986). The reviewing court must employ a strong presumption of the reasonableness of that counsel's assistance. Levine v. Manson, supra, 640; Chance v. Bronson, supra, 678. The assistance must be viewed in light of the circumstances that existed at the time, and not with either the benefit or the distortions of hindsight. Levine v. Manson, supra. Even if that assistance is found to have been lacking in CT Page 14989 competency, the petitioner bears the further burden of showing that there is a reasonable probability that, were it not for the deficiency of counsel, the result of the trial would have been different. Aillon v. Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989)," Williams v. Bronson, 21 Conn. App. 260, 263 (1990). Further, strategic or tactical choices of counsel are not subject to challenge. (Strickland, supra). The petitioner's claims must be evaluated in light of these standards.
In evaluating the performance of defense counsel in this case, the court concludes that under these circumstances, he achieved a remarkable result for Mr. Ivers.
An examination of the state's case, as portrayed in Exhibits 1-5, leads to the conclusion that had Mr. Ivers gone to trial, he would, in all likelihood, have been convicted of murder. If tried to a jury, the members would have been appalled at the cruel and callous behavior displayed by Ivers and his associate and he could have expected no sympathy.
Thus, counsel's negotiated plea bargain represents an accurate evaluation of a case and a result no reasonable knowledgeable lawyer could criticize. In fact, in the vernacular of the street, one could say the petitioner "got away with murder." This is not to disparage the disposition of the case by the prosecution. By the time the perpetrators were charged, the matter was over 10 years old and such old cases can engender problems.
It is the court's conclusion that defense counsel produced an excellent result for his client in a difficult situation. Waiving the statute of limitations in order to avoid the exposure to a 60 year sentence represents good criminal defense work.
What the court has been inferring in the above discussions is here restated in order to address the second prong of the Strickland test.
The petitioner has not demonstrated that, absent his counsel's negotiated plea bargain, he would be better off. Or, put another way, had counsel neglected to plea bargain and given Mr. Ivers what he seeks from this court, it is likely he should be serving a 60 year sentence for murder instead of a 30 year sentence.
Treating the petition as proceeding on the stated grounds, it should be denied. CT Page 14990
 CONCLUSION
Judgment may enter for the respondent.
Anthony V. DeMayo Judge Trial Referee